## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| ANGIE & LARRY SPARKS | § | |
| | § | |
| VS. | § | ACTION NO. 4:19-CV-110-Y |
| | § | |
| FOREST RIVER, INC. | § | |

## PLAINTIFFS ANGIE & LARRY SPARKS' THIRD AMENDED COMPLAINT

Plaintiffs, Angie & Larry Sparks, ("Sparks"), pursuant to the Court's Order of October 5, 2020, respectfully amend their Complaint and plead as follows:

## CONTENTS

I. PARTIES.................................................................................................................. 2

II. JURISDICTION AND VENUE ........................................................................... 2

III. COMMON FACTS .............................................................................................. 3

IV. COUNT 1 - PRODUCTS LIABILITY................................................................ 9

V. COUNT 2 – NEGLIGENCE................................................................................ 12

VI. COUNT 3 – BREACH OF WARRANTY ......................................................... 13

VII. COUNT 4 – STATUTORY CLAIMS ............................................................. 18

IX. OTHER MATTERS........................................................................................... 21

X. PRAYER ............................................................................................................. 21

# I. PARTIES

1.    Plaintiff, Angie Sparks, is an Individual whose address is 1005 Hickey Court, Granbury, Texas 76049 and is a citizen of Texas.  The last three numbers of Angie Sparks' driver's license number are 864.  The last three numbers of Angie Sparks' social security number are 061.

2.    Plaintiff, Larry Sparks, is an Individual whose address is 1005 Hickey Court, Granbury, Texas 76049 and is a citizen of Texas.  The last three numbers of Larry Sparks' driver's license number are 914.  The last three numbers of Larry Sparks' social security number are 083.

3.    Defendant Forest River, Inc., ("Forest River" or "Forest"), a Corporation not a citizen of Texas, was served pursuant to sections 5.201 and 5.255 of the Texas Business Organizations Code by serving the registered agent of the corporation, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218 USA, its registered office.    The Defendant has appeared, subjected itself to the personal jurisdiction of the Court, and removed this action to federal court.

# II. JURISDICTION AND VENUE

4.    This is a diversity case and the subject matter in controversy is within the jurisdictional limits of this court involving monetary relief over $100,000.

5.    This court has jurisdiction over Defendant Forest River, Inc., because said Defendant purposefully availed itself of the privilege of conducting activities in the State of Texas and established minimum contacts sufficient to confer jurisdiction over said Defendant, and the assumption of jurisdiction over Forest River, Inc. will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

6.   A jury is demanded, as was demanded by the Plaintiffs in the state court.

7.   Defendant Forest River, Inc. had continuous and systematic contacts with the state of Texas sufficient to establish general jurisdiction over said Defendant.

8.   Furthermore, Defendant Forest River, Inc. engaged in activities constituting business in the state of Texas as provided by Section 17.042 of the Texas Civil Practice and Remedies Code, in that said Defendant contracted with a Texas resident and performance of the agreement in whole or in part thereof was to occur in Texas.

### III. COMMON FACTS [1]

9.   Defendant Forest River, Inc., ("Forest River"), manufactured and sold through its dealer a 2016 Sierra by Forest River 5th Wheel Travel Trailer, (the "travel trailer" and "Mobile Home"), to the Sparks.

10.  The travel trailer cost tens of thousands of dollars.

11.  Forest River did not install a Ground Fault Circuit Interrupter, ("GFCI"), or an Arc Fault Circuit Interrupter, ("AFCI"),  in the circuit panel for the travel trailer.

12.  Doing so would have cost Forest River about $20.

13.  When a Ground Fault Circuit Interrupter or an Arc Fault Circuit Interrupter are installed between the main incoming electric line and the circuit breaker box for a travel trailer,  when there is a short in the wiring, the circuit interrupt is triggered and the electricity is instantly turned off, preventing fires and 'arcing' of the circuit breaker box.   Again, the cost of this basic safety feature is about $20.

---

[1] The following facts are hereby expressly incorporated as separately stated jointly and in the alternative, for each count pleaded below.

14. Forest River also negligently failed to properly design and install the electric wiring over the electric fireplace, the result of which was that when the fireplace was used, the insulation of those wires melted, causing a short and fire.

15. When the Sparks used their electric fireplace in their recently purchased travel trailer manufactured by, and placed into the stream of commerce by Forest River, the defective wiring caused a short, no AFCI or GFCI circuit was triggered and a fire started.

16. The shorted wiring continued to heat and no GFCI circuit was triggered and other wiring in the circuit breaker box began to melt causing multiple arcing and shorts, but there was no GFCI or AFCI to interrupt the flow of electricity in the travel trailer.

17. Faced with the emergency threat of a fire and sparks shooting out of the circuit breaker box—preventing access to that box—Mrs. Sparks ran from the travel trailer in an effort to save herself and her husband by disconnecting the main electric line outside of the travel trailer.

18. As is foreseeable in that emergency situation, and her reasonable response thereto, Mrs. Sparks fell when exiting the travel trailer, suffering a life changing and debilitating injury.

19. From that injury, Mrs. Sparks suffers from very real, very substantial daily pain and mental anguish, has limited mobility, can no longer work,  and can no longer enjoy her travels.

20. Mr. Sparks also suffers from the acts of Forest River complained of herein and the personal injuries to his wife, which has caused him the loss of consortium and mental anguish.

21.  Forest River's actions were unconscionable and were the producing cause of the injuries to the Sparks, the consumers who purchased Forest River's travel trailer.

22.  Forest River's actions were intentional with actual awareness of the unfairness of their practice and of the condition that constituted a breach of its warranties.  Further, Forest River acted with flagrant disregard of prudent and fair practices with respect to electrical safety in the travel trailer it manufactured.

23.  The acts complained of herein were and are also the producing cause of damage to other consumers of Forest River's travel trailers and in addition to damages, costs, exemplary and statutory damages, and attorneys fees, an injunction is sought preventing Forest River from manufacturing more travel trailers without the proper installation of GFCI and AFCI circuit breakers.

24.  Forest River negligently manufactured the travel trailer purchased by the Sparks both in negligently wiring the electrical wires above the electric fire place and in failing to install a GFCI and AFCI circuit breaker.

25.  The negligence is further a matter of *res ipsa loquitur*.

26.  While engaged in the manufacture and sale of the 2016 Sierra by Forest River 5th Wheel Travel Trailer, Defendant Forest River, Inc. manufactured and sold a certain 2016 Sierra by Forest River 5th Wheel Travel Trailer and other like products, to consumers within the stream of commerce.

27.  Defendant Forest River, Inc. intended and expected that the 2016 Sierra by Forest River 5th Wheel Travel Trailer, so introduced and passed on in the course of trade would ultimately reach a consumer or user in the condition in which it was originally sold.

28.  The travel trailer was defective and unsafe for its intended purposes at the time it left the control of Defendant Forest River, Inc. and at the time it was sold in that it failed in its design to prevent a voltage spike and fire.

29.  The product was defectively designed and unreasonably dangerous in that the wiring was improperly installed causing a fire.  The defect in design was a producing cause of the injuries and damages set forth herein.

30.  In addition, the occurrence made the basis of this suit and the resulting injuries and damages set out herein were a direct and proximate result of the negligence of Defendant Forest River, Inc. including but not limited to one or more of the following respects, or by combination thereof:

31.  (a) Failure of the fireplace and wiring or other systems of said 2016 Sierra by Forest River 5th Wheel Travel Trailer and its attendant equipment;

32.  (b) Failing to inspect said 2016 Sierra by Forest River 5th Wheel Travel Trailer and its attendant equipment;

33.  (c) Failing to properly warn Plaintiff about the condition of said 2016 Sierra by Forest River 5th Wheel Travel Trailer and its attendant equipment.

34.  Further, the occurrence made the basis of this suit and the resulting injuries and damages set out below were a direct and proximate result of negligence attributable to Defendant Forest River, Inc. including but not limited to one or more of the following respects, or by a combination thereof:

35.  (a) Failing to use due care in the manufacture of the 2016 Sierra by Forest River 5th Wheel Travel Trailer; Failing to use due care in the design of the 2016 Sierra by Forest River 5th Wheel Travel Trailer;

36.  (b) Failing to use proper materials reasonably suited to the manufacture or design of the 2016 Sierra by Forest River 5th Wheel Travel Trailer or the component parts thereof;

37.  (c) Failing to use due care to test and/or inspect the 2016 Sierra by Forest River 5th Wheel Travel Trailer or the component parts thereof to determine its durability and function ability for the purpose for which it was intended.

38.  Further, Plaintiffs injuries and the occurrence made the basis of this suit and the resulting injuries and damages set out below were a direct and proximate result of the negligence of Defendant Forest River, Inc. including but not limited to one or more of the following respects, or by a combination thereof:

39.  (a) Failing to design the 2016 Sierra by Forest River 5th Wheel Travel Trailer to prevent a fire due to a malfunction;

40.  (b) Failing to design the 2016 Sierra by Forest River 5th Wheel Travel Trailer without a guard or shield on it as would have been done by a reasonable and prudent manufacturer under the same or similar circumstances.

41.  All of which Defendant Forest River, Inc. knew, or in the exercise of ordinary care, should have known.

42.  At the time it manufactured the 5th Wheel Travel Trailer sold to the Sparks, the Defendant Forest River, Inc. knew that AFCI circuits provided safety by cutting of current when an arc-fault was detected in the electric line.

43.  Defendant Forest River, Inc. knew that the cost of including AFCI circuits in its Fifth Wheel Travel Trailers was insignificant in relationship to the sales price of the Fifth Wheel Travel Trailers.

44.  Further facts in regard to the defective manufacture of the travel trailer are peculiarly within the knowledge of Defendant Forest River.

45.  The design of the 2016 Sierra by Forest River 5th Wheel Travel Trailer was within the exclusive control of Defendant Forest River, Inc.

46.  Plaintiffs had no means of ascertaining the method or manner in which the product was designed, and it was used by Plaintiffs in that condition.

47.  The occurrence causing harm to Plaintiffs, as described above, was one which, in the ordinary course of events, would not have occurred without negligence on the part of Defendant Forest River, Inc. Defendant's aforementioned conduct constitutes a careless, negligent, and reckless disregard of a duty of care for its customers, as detailed below.

48.  Defendant Forest River, Inc.'s acts or omissions described herein, when viewed from the standpoint of Defendant Forest River, Inc. at the time of the act or omission, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plaintiffs and others.

49.  As detailed below, Defendant Forest River, Inc. had actual awareness of the risk involved in the above described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiffs and others.

50.  As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff, Angie Sparks was caused to suffer personal injuries.

51.  As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff, Angie Sparks was caused to suffer property damage, decreased value to her travel trailer, and has incurred the damages including but not limited to:

52.  (a) Reasonable medical care and expenses in the past incurred by Mrs. Sparks for the necessary care and treatment of the injuries resulting from the

accident complained of herein and such charges are reasonable and were usual and customary charges for such services in Texas;

53.  (b) Reasonable and necessary medical care and expenses which will in all reasonable probability be incurred in the future;

54.  (c) Physical pain and suffering in the past;

55.  (d) Mental anguish and Physical pain and suffering in the future;

56.  (e) Physical impairment;

57.  (f) Damages for subjection to risk;

58.  (g) Living expenses; and

59.  (h) Past and Future lost income and loss of earning capacity.

60.  And Mr. Sparks has suffered from Loss of Consortium including damages to the family relationship, loss of care, comfort, solace, companionship, protection, services, etc.; and Property damages.

## IV. COUNT 1 - PRODUCTS LIABILITY

61.  Forest designed the Mobile Home.

62.  The Mobile Home was designed defectively and that defective design is a producing cause of injury to the Sparks.

63.  As discussed above, Forest had safer alternative designs and that the mobile home was unreasonably dangerous as designed, taking into consideration the utility of the mobile home to its intended market balanced against the foreseeable risks associated with use by its intended users.

64.  There was a safer alternative design to the travel trailer sold by Forest River– including a GFCI and/or an AFCI circuit breaker.

65.  As discussed above, A GFCI or AFCI circuit breaker would have prevented and significantly reduced the risk of the Sparks' personal injury, property damage, without substantially impairing the travel trailer's utility.

66.  AFCI circuits protect against arcing caused by short circuits, power surges, faulty wiring, etc.

67.  Further, as discussed above, including a GFCI was both economically and technologically feasible at the time the travel trailer was manufactured by the application of existing technology—i.e., GFCI and AFCI circuit breakers.

68.  For example, Texas law requires that a GFCI circuit protect against outlets in the kitchen area.

69.  The Sparks' travel trailer has no such GFCI protection in the kitchen area outlets.

70.  The cost of including these basic safety devices is only about $20.

71.  Including GFCI and AFCI circuit breakers would not have impacted the utility of the travel trailer,  but would have made it safer.

72.  As discussed above, the defective design was a producing cause of the injuries suffered by the Sparks.

73.  Again, the design of the travel trailer was defective and unreasonably dangerous, as detailed herein.

74.  It is reasonably likely that there will be a short in electric wiring in a travel trailer, especially when wiring is negligently designed to be on top of an electric fireplace, and installed without appropriate insulation.

75.  It is known and expected that short circuits can and do occur in electrical wiring.

76.  In the past, the Defendant has denied knowledge as to whether it is known and expected that short circuits can and do occur in electrical wiring.

77.   It is reasonably likely that such a short will start a fire and cause other shorts in the electric breaker box.

78.  No utility would be lost by including GFCI and AFCI circuit breakers.

79.   Such breakers cost about $20 and do not impair the usefulness of the travel trailer.

80.  Users of travel trailers are not generally aware of the dangers from a manufacture's choices to save $20 and place the public at risk, and the condition is not obvious or generally known to the public.

81.  An ordinary consumer expects safe wiring in their travel trailers.

82.  No AFCI circuit was ever installed in the Mobile Home by Forest River.

83.  The defective design discussed herein, was the producing cause of injury the plaintiffs detailed in this Complaint.

84.  As detailed above, Forest River manufactured and sold the Mobile Home in a defective condition unreasonably dangerous to the users, and that condition caused physical harm, as detailed above.

85.  As detailed above, Forest River is engaged in the business of manufacturing and selling travel trailers and it is expected to and did in this case reach the user without substantial change in the condition in which it is manufactured and sold.

86.  Forest River is a manufacturer who placed in commerce a product, the travel trailer purchased by the Sparks, that was rendered dangerous to life of limb by reason of a defect in the design and wiring, as discussed above, and for

that reason, Forest River is strictly liable to the Sparks for the injuries, as discussed above, that they sustained because of the defective condition.

## V. COUNT 2 – NEGLIGENCE

87.  A reasonable manufacture would have anticipated and guarded against the electrical faults as discussed above.

88.  Forest River therefore had a duty of care owed to the purchasers of the Mobile Home it manufactured.

89.  Forest River had a duty to exercise ordinary care in the design of its product.  As discussed above, it failed to do so.

90.  Forest River also has a duty to inform users of hazards associated with the use of its products, and, as discussed above, it did not do so.

91.  Forest River designed and manufactured the electrical system and manufactured the Mobile Home, and the failure of that electrical system caused the Sparks' injuries.

92.  Forest River owed a duty to consumers to act as a reasonable prudent manufacturer would act under the same or similar circumstances regarding any foreseeable risk, and it failed in that duty, proximately resulting in the damages caused to the Sparks as discussed herein.

93.  Forest River should, and upon information, did, recognize its failure to include AFCI or GFCI circuit interrupts as involving an unreasonable risk of causing physical harm to those who use it for a purpose for which the travel trailer was intended.

94.  Forest River should have expected users of its product to be endangered by its probable use, and Forest River is liability for the harm caused to it by the

Sparks lawful use of the travel trailer a manner and for a purpose for which it was supplied.

95.  Forest River had actual knowledge of the importance of AFCI and GFCI circuits, and had outlets in the Mobile Home underlined as having AFCI or GFCI protection, but those outlets were not so protected.

96.  In other words,  instead of spending the $20.00 or so to protect the users of a product sold for tens of thousands of dollars,  Forest River defrauded the users of the travel trailer, by placing a sticker on outlets which falsely stated that there was AFCI or GFCI protection.

97.  Forest River's failure to install AFCI and GFCI circuit interrupts created an extreme degree of risk, both from fire as was occurred to the Sparks, and from electrocution.

98.  Without an AFCI circuit interrupt, instead of cutting of the electricity when there is a short in the line, the electricity is left on and sparks and fire were generated at the fuse box.

## VI. COUNT 3 – BREACH OF WARRANTY

99.   As discussed above, on or about December 19, 2016, the Sparks were injured and their property damaged while using the 2016 Sierra by Forest River 5th Wheel Travel Trailer for the purpose and in the manner in which it was intended to be used, suddenly and without warning a fire and electric short occurred due to faulty wiring and absence of both GFCI and AFCI interrupt circuits, injuring Angie Sparks, as herein described.

100. These injuries were proximately caused by Forest River's breach of its warranties of habitability and fitness for use as a travel trailer.

101. Forest River and its dealer were notified of the breach of warranty and resulting injuries, and while some repairs were performed on the damaged portions of the travel trailer, no GFCI or AFCI interrupt circuits were installed, and no compensation was provided for the Sparks bodily injury, or consequential economic damages.

102. Forest River refused to pay for the repair or damages caused to the Sparks' travel trailer.

103. Forest River provided written material for the consumer of the Sparks' travel trailer, including instructions and an express, written warranty.

104. **UCC IMPLIED WARRANTY OF MERCHANTABILITY.** Forest River is a manufacturer and merchant of travel trailers.

105. Forest River, through its dealer, sold the Mobile Home to the Sparks, who purchased Forest River's Mobile Home.

106. The Mobile Home was not merchantable because it was not fit for ordinary purposes—as detailed above, the product lacked something needed for adequacy, GFCI and AFCI interrupt circuits—so that the Mobile Home could be safely used as a mobile residence.

107. A travel trailer with a fuse box that breaks into flames and sparks when there is a short in the wiring is not safe for ordinary use.

108. Wiring placed without sufficient insulation, installed above a fire place in a Mobile Home is not fit for ordinary purposes.

109. As discussed above, the breach of warranty of merchantability was the producing cause of injuries, as detailed above, and Forest River was notified of its breach.

110. **UCC IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**.   Again, Forest River is a manufacturer and merchant of travel trailers.

111.  Forest River, through its dealer, sold the Mobile Home to the Sparks, who purchased Forest River's Mobile Home.

112. Forest River had knowledge that its travel trailers were being purchased for the particular purpose of using the travel trailers as mobile residences, and that the purchasers of its product relied upon Forest River's judgment in making the travel trailers fit for their intended use.

113. Forest River clearly had reason to know of the Sparks intended use of the travel trailer.  Forest River advertised their product for the exact use that the Sparks used the travel trailer for.

114. Forest River had actual knowledge that consumers used its travel trailers as homes, and specifically intended for the travel trailer purchased by the Sparks to be used as a home.

115.  Forest River encouraged consumers to use its travel trailers as homes.

116. The Sparks had the particular purpose of using the travel trailer as a mobile residence.

117.  The Sparks purchased the travel trailer with a fire place, and electric lights and outlets, to use the fireplace and electric lights and outlets for their intended and normal purposes.

118.   The Sparks did not do anything out of the ordinary or use the travel trailer in any unordinary way.

119. The damages have nothing to do with the Sparks—Forest River sold a product that is dangerous, and not fit for the normal use for which it is intended.

120. A circuit breaker box is intended to cut off electrical flow when there is a short in the line.

121. A circuit breaker is not intended, to break into flames and sparks like the fourth of July, when there is a short in the line.

122. Also, wiring is intended not to melt and cause a short.

123. By placing wiring, without sufficient insulation, over a fireplace built into the travel trailer,  Forest River's product was not fit for its intended purpose.

124. Travel trailers are intended to provide a safe habitat,  a mobile residence.

125.  A travel trailer that breaks into flames and exploding sparks is not fit for its intended purpose.

126. The Sparks relied on the skill and judgment of Forest River in manufacturing the travel trailer, and choosing how the wiring was installed, and what protection was included in the fuse box.

127. As discussed above, the breach of warranty of fitness for use was the producing cause of the injuries described above and, as detailed above, and Forest River was notified of its breach.

128. **IMPLIED WARRANTY OF HABITABILITY**.  Again, Forest River is the manufacturer and builder of the Mobile Home.

129. Forest River's product is designed for being used for residential living.

130. It is a mobile residence.

131.  Forest River, through its dealer, sold the Mobile Home to the Sparks, who purchased Forest River's Mobile Home.

132. The Sparks purchased the Mobile Home with the clear and express purpose of using the Mobile Home for residential living.  That was how the product was used.

133. Forest River had knowledge that its travel trailers were being purchased for the particular purpose of using the travel trailers as mobile residences.

134. Forest River created the defective conditions discussed above.

135. The Mobile Home was used in the condition it was manufactured in.

136. The electrical wiring was in the state that Forest River manufactured it.

137. Nobody removed AFCI and GFCI circuits—Forest River, by design, and in the alternative, by negligence, failed to install the circuits.

138. Nobody removed the insulation from the wiring above the fireplace.

139. Forest River by design, or in the alternative, by negligence, failed to install the insulation, and placed the wiring in a dangerous condition—where it would get hot and melt when the fireplace was used.

140. The defects in the Mobile Home were latent.  It could not be seen from normal view that the wiring inside the walling over the fireplace was dangerous and lacked insulation.

141. It could not be seen from normal view that the Mobile Home lacked AFCI and GFCI circuits.

142. Quite the opposite—Forest River had attached labels to outlets claiming GFCI protection, when in fact there was none.

143. Defective electrical wiring and circuit protection is a latent defect.

144. The latent defects made the Mobile Home uninhabitable, that is, the residence was not safe for human habitation.

145. The defects were in the habitable areas of the Mobile Home and inside the residence.

146. As discussed above, the breach of warranty of habitability was the producing cause of the injuries described above and Forest River was notified of its breach.

## VII. COUNT 4 – STATUTORY CLAIMS

147. **TEXAS DTPA.**  The Sparks are consumers, individuals who purchased and acquired the travel trailer for their personal use.

148. The defendant, Forest River, is a person as defined by the DTPA, as it is a corporation, who used and engaged in the unlawful practices complained of in this Complaint.

149. Forest River is connected to the purchase transaction jointly and in the alternative because it sold the travel trailer through its dealer, and/or:

150. (a) because its advertisements and representations about the travel trailer reached the Sparks;

151. (b) because Forest River benefited from the transaction as the manufacturer selling its travel trailer which the Sparks Purchased;

152. (c) because Forest River provided instructions and warranties; and

153. (d) because Forest River manufactured the product and its advertising was a basis of the Sparks decision to purchase the travel trailer and/or its written warranty was a basis of the bargain for the purchase of the travel trailer.

154. Forest River engaged in and committed wrongful acts prohibited by Texas Business & Commerce Code Section 17.50, including breach of warranty and unconscionable acts, as discussed herein.

155. Forest River violated Section 17.46(b)(5) by representing that the travel trailer had characteristics that it did not have, specifically, that outlets were protected by AFCI or GFCI interrupt circuits.

156. Forest River also violated Section 17.46(b)(24) by failing to disclose information about the travel trailer that was known at the time the Sparks purchased the travel trailer, and which failure to disclose was intended to induce the Sparks to enter into the transaction, specifically Forest River did not disclose the large number of electrical fires and resulting injuries from its travel trailers, which were at the time known to Forest River, and, Forest River did not disclose that it had not installed AFCI or GFCI interrupt circuits.

157. Forest River also violated Section 17.50(a)(2) by violating the implied warranties as detailed above, which breach of warranties were a producing cause of damages, as detailed above, to the Sparks.

158. In violation of Section 17.50(a)(3), Forest River engaged in the unconscionable action that, to the Sparks' determent, took advantage of their lack of knowledge as to the travel trailer's wiring to a grossly unfair degree.

159. It is unconscionable to fail to include a $20 part in a produce sold for tens of thousands of dollars, when the absence of that part presents a real and present danger to safety and habitability, and then to falsely attach labels to electrical outlets notifying the purchasers and users that the outlets are protected by GFCI interrupt circuits when they are not.

160. The unfairness of trying to make an extra $20.00 in profit on a product sold for tens of thousands of dollars, when that places the purchasers and users of the product at serious bodily risk is glaringly noticeable, flagrant, complete and unmitigated—especially where Forest River <u>knew</u> of the safety necessity of AFCI or GFCI interrupt circuits and attached labels to electrical outlets, falsely advertising the existence, safety, and protection of those circuit interrupts—when there were none. All in an effort to squeeze out an extra $20.00 in profit on

transactions for tens of thousands of dollars.  It is unconscionable.  As discussed above, the foregoing acts of Forest River were the producing cause of the Sparks' injuries.  The afore described acts of Forest River were both the cause-in-fact and a substantial factor in causing the Sparks injuries, as detailed above.

161. Without the acts of Forest River herein complaint of, the Sparks would not have received the injuries complained of.

162. Upon information, the actions of Forest River were knowing, made with actual awareness of the falsity and unfairness of their actions.  Further, Forest River acted with actual awareness that its failure to include AFCI or GFCI interrupt circuits constituted a breach of warranty, and that its actions were deceptive and unfair.

163. Forest River clearly knew of the safety importance of the interrupt circuits since it put labels on electrical outlets claiming to have the interrupt circuit protection.

164. Forest River clearly knew that it did not include AFCI or GFCI interrupt circuits, because it did not install the circuits even after the fire when repairs were made.

165. Forest River acted with the intent that consumers, including the Sparks rely to their determent on the fake labels attached to the electrical outlets and the Sparks' ignorance of the unfairness of the purchase—paying tens of thousands of dollars for a travel trailer that was unsafe and would, in the state it was manufactured, eventually burst out in flames.

166. Further, Forest River acted with disregard of prudent and fair business practices by trying to save $20 in costs, when the risk of damage and injury to

the customer was substantial, and the product was sold for tens of thousands of dollars.

167. The Sparks provided written notice of the DTPA claim at least 60 days before filing suit or, such notice was not required because it was impracticable because the statute of limitations was about to run.

## VIII. OTHER MATTERS

168. All conditions precedent have occurred or have been performed.

169. Any conflicting allegations are pled in the alternative.

## IX. PRAYER

170. On the foregoing grounds, the Sparks pray that judgment be entered for them against the Defendant for damages in an amount within the jurisdictional limits of the Court; statutory damages including damages pursuant to the Texas Deceptive Trade Practices Act, exemplary damages; costs; attorney's fees; pre-judgment interest; and post-judgment interest, costs of court; and such other and further relief to which the Plaintiffs may be entitled at law or in equity.

171. Further, the Sparks pray that the Court grant judgment against the Defendant for the damages as proven on final trial, together with attorney's fees, costs, interest, exemplary damages, statutory damages and other relief to which the Plaintiffs are shown justly entitled.

172. Further, pursuant to the DTPA the Sparks pray for the entry of a permanent injunction enjoining the defendants from placing into the stream of commerce any travel trailer with a circuit breaker box that does not contain a AFCI safety circuit between the main electrical line and the breaker box, and further, from labeling outlets as having GFCI circuit breaker protection, when there is no such protection.

DATED:  October 12, 2020

Respectfully submitted,

Gary N. Schepps
Texas Bar No. 00791608
Drawer 670804
Dallas, Texas  75367
(972) 200-0000 - Telephone
(972) 200-0535 - Facsimile
legal@schepps.net
Counsel for Plaintiffs